UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHAYSANH KHAKEO, )<br>　　　　Plaintiff )<br> )<br>v. )<br> )<br>DENNIS MORIARTY, )<br>in his individual capacity, )<br>KEVIN SULLIVAN, )<br>in his individual capacity, )<br>and the CITY OF LOWELL, )<br>　　　　Defendants ) | CIVIL ACTION NO. 04-11941-RWZ |

**PLAINTIFF PHAYSANH KHAKEO'S CONCISE STATEMENT OF DISPUTED MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT KEVIN SULLIVAN'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Phaysanh Khakeo, pursuant to Local Rule 56.1, submits the following statement of disputed material facts in support of his Opposition to Defendant Kevin Sullivan's Motion for Summary Judgment. Plaintiff disputes the following numbered paragraphs of Defendant's concise statement of undisputed material facts, which reveal genuine issues to be tried:

2. Denied as to the function of the Community Response Unit (hereinafter "CRU"). The function of the CRU was as the "gang unit." The CRU was referred to by superior officers as well as Defendant Dennis Moriarty as the "gang unit." Lieutenant ("Lt.") Sullivan testified that the CRU's responsibilities included "to enforce gang-related activities in the city of Lowell." Deposition of Kevin Sullivan (hereinafter, "Pl. Ex. 3") at 18/5-7.[1] Moriarty stated that they were both assigned to the gang unit that night. Lowell Police Department ("LPD") Arrest Report of Phaysanh Khakeo, Sept. 9, 2001

---

[1] Citations to deposition and trial transcripts utilize the "page/line" model throughout.

    (hereinafter, "Pl. Ex. 4").  Lieutenant Paul Laferriere wrote to Superintendent Edward Davis that the "gang unit" responded to Chelmsford Street on September 9, 2001, and Lt. Sullivan testified that this referred to the CRU cruiser he was driving that night.  Pl. Ex. 3 at 21/22-22/9; Letter from Lt. Paul Laferriere, LPD, to Superintendent Edward Davis III, LPD (Sept. 19, 2001) (hereinafter, "Pl. Ex. 5").

5. Plaintiff disputes the contention that the purpose of Moriarty joining Lt. Sullivan in his marked police car was to carry out "patrol duties" on Sept. 9, 2001, since that is undefined, and since both Moriarty and Lt. Sullivan were acting as part of the CRU/gang unit that night.  Lt. Sullivan testified that he could not say for sure why Moriarty was in his patrol car.  Pl. Ex. 3 at 24/4-9.  Moriarty stated that they were both assigned to the gang unit that night.  Pl. Ex. 4.  Lieutenant Paul Laferriere wrote to Superintendent Edward Davis that the "gang unit" responded to Chelmsford Street on September 9, 2001, and Lt. Sullivan testified that this referred to the CRU cruiser he was driving that night.  Pl. Ex. 3 at 21/22-22/9; Pl. Ex. 5.  Lt. Sullivan testified that the CRU's responsibilities included "to enforce gang-related activities in the City of Lowell."  Pl. Ex. 3 at 18/5-7.

7. Lt. Sullivan was reporting to the call about a gang fight; however, Plaintiff disputes that they arrived in the "vicinity" of the reported fight.  They did not go to the site of the gang fight, 125 Grand Street; instead, they stopped at Plaintiff's home, 115 Chelmsford Street.  Affidavit of Kevin Sullivan (hereinafter "Def. Ex. A") at ¶ 7 & 12.

8. Disputed.  Lt. Sullivan and Moriarty did not observe Asian male individuals.  Although the police broadcast mentioned Asian males, Lt. Sullivan and Moriarty did not see the race of any people until they arrived at Plaintiff's home.  Pl. Ex. 3 at 56/12-14; Pl. Ex. 4;

      LPD Arrest Report of Inthala Vannaraj and Somphet Khakeo, Sept. 9, 2001 (hereinafter "Pl. Ex. 8"). Moriarty testified that he saw <u>three</u> individuals "come from the area of the fight." Deposition of Dennis Moriarty (hereinafter, "Pl. Ex. 2") at 30/15-16; 23-24. Lt. Sullivan testified that he saw <u>two</u> males. Pl. Ex. 3 at 26/22-27/4. Lt. Sullivan also testified that he could not be certain of the alleged individuals' race or physical description because they were "approximately a hundred fifty yards away" while he was "operating a police cruiser." Pl. Ex. 3 at 55/19-21 and 56/6-9. Lt. Sullivan testified that he could see the skin color of the two males "running up the sidewalk, [b]ut I could not tell whether they were Caucasian males, Asian males, Spanish, but I know they were not dark-skinned." Pl. Ex. 3 at 56/2-57/3. Lt. Sullivan said the alleged individuals "had black hair." Pl. Ex. 3 at 56/4-5.

9.   Disputed. There is no contemporaneous evidence supporting the contention that cruisers or uniformed officers were visible from Lt. Sullivan's cruiser. If McCann did gesture to Lt. Sullivan and Moriarty to detain some individuals, it was not anyone at 115 Chelmsford Street, since no one other than the officers arrived there at that time. Deposition of Phaysanh Khakeo (hereinafter, "Pl. Ex. 6") at 68/11-18; Deposition of Somphet Khakeo (hereinafter, "Pl. Ex. 16") at 39/23. Lt. Sullivan and Moriarty did not see McCann and did not detain anyone based on his directions. Pl. Ex. 3 at 29/12-14.

10.   Disputed. Phaysanh Khakeo stated that he does not remember anyone but the police officers coming into the party after he heard sirens. Pl. Ex. 6 at 66/20 & 68/11-18. Somphet Khakeo testified that no one entered the party after he started hearing sirens. Pl. Ex. 16 at 39/23. Moriarty did not personally observe individuals enter 115 Chelmsford

Street; he reported that another officer told him, after the fact, that "numerous Asian males . . . went to 115 Chelmsford St." Pl. Ex. 4. Moriarty stated in his arrest report of Phaysanh Khakeo the reason for entering the driveway was that there were already "numerous Asian males" in the driveway "at [that] time," without any mention of any individuals entering the driveway. Pl. Ex. 4.

12. Admitted insofar as the driveway area is a paved location, enclosed on three sides by buildings, with the only means of public access by which Lt. Sullivan and Moriarty entered. Disputed insofar as any "fleeing Asian males had entered" the driveway. Phaysanh and Somphet Khakeo testified that no one other than Moriarty and Lt. Sullivan entered the driveway. Pl. Ex. 6 at 68/11-18; Pl. Ex. 16 at 39/23. Somphet Khakeo testified that no one entered the party after he started hearing sirens. Pl. Ex. 16 at 39/23. Phaysanh Khakeo stated that he does not remember anyone but the police officers coming into the party after he heard sirens. Pl. Ex. 6 at 66/20.

13. Disputed. Moriarty testified that he went to the back and started talking to people there. *Com. v. Khakeo and Vannaraj*, Case Nos. 0111CR006131-32 (Mass. Dist. Ct. (Lowell) 2002), Tr. Transcr. vol. I-1 (Dennis Moriarty)(hereinafter "Pl. Ex. 9") at 48/16-49/14. They told him they were having a barbeque. Moriarty mentioned the fight up the street, and the individuals said "Why don't you go up the street and take care of the fight?" Pl. Ex. 6 at 69/20-71/22. Lt. Sullivan testified that he walked toward the rear of the resident's driveway, where people were sitting at a table. Pl. Ex. 3 at 29/17-30/10. Moriarty testified that he and Lt. Sullivan then both approached several individuals and "Sullivan came over and told [the individuals] to get up against the wall." Pl. Ex. 2 at

35/16-36/8; Pl. Ex. 9 at 36/12-18.  Lt. Sullivan testified that he heard Moriarty tell people to not move, and to take their hands out of their pockets.  Pl. Ex. 3 at 59/7-14.  Moriarty testified at Phaysanh Khakeo's criminal trail that Lt. Sullivan ordered people against the wall.  Pl. Ex. 9 at 11/7-15.  Neither Moriarty nor Sullivan reported pat frisks of multiple individuals in their respective police reports.  There is no evidence supporting that either Moriarty or Lt. Sullivan believed that these individuals were involved in the fight down the street.  Lt. Sullivan stated that nothing about the physical appearance of anyone at the party would lead him to believe that any of the individuals were engaged in any kind of a fight.  Pl. Ex. 3 at 34/5 - 35/16.  Lt. Sullivan testified that he pulled over in order to perform a *Terry* stop of three individuals, but he did not get any names or addresses (Pl. Ex. 3 at 32/16-19); he did not ask whether anyone had been involved in a fight (33/3-5); he did not investigate to see whether any of them had just been running, *e.g.*, by checking their heart rate (32/23-33/2); and he did not try to identify the property owner or investigate what kind of a party was going on there (33/24-34/4).  Lt. Sullivan and Moriarty testified that they were familiar with Asian gang members in the Lowell area and that they did not recognize anyone at the barbeque to be a gang member.  Pl. Ex. 2 at 15/13-24 & 33/13-15; Pl. Ex. 3 at 33/11-23.

14. Disputed.  Def. Ex. A does not support this statement, and there is insufficient evidence as to what Lt. Sullivan observed and when, since this statement is undefined as to time.  Lt. Sullivan testified that he only observed one table.  Pl. Ex. 3 at 30/7-10.  Plaintiff admits that parked vehicles, a table, a television, bottles of beer, and his family and friends were present.

15. Disputed. Moriarty, Phaysanh Khakeo, Somphet Khakeo, and Xaykham Kosaketh all stated that Officer Moriarty entered the area by telling every male there to get up against the wall and/or to put their hands up. Pl. Ex. 4; *Com. v. Khakeo and Vannaraj*, Case Nos. 0111CR006131-32 (Mass. Dist. Ct. (Lowell) 2002), Tr. Transcr. vol. II-3 (Phaysanh Khakeo)(hereinafter "Pl. Ex. 10") at 8/9-10, vol. II-10 (Xaykham Khakeo)(hereinafter "Pl. Ex. 13") at 11/15-16; Pl. Ex. 16 at 40/21-22. Moriarty testified that Lt. Sullivan then demanded that people get up against the wall. Pl. Ex. 2 at 35/16-36/8; Pl. Ex. 9 at 11/8-9. Lt. Sullivan testified that neither he nor Moriarty got the names or addresses of the individuals. Pl. Ex. 3 at 32/16-22. Lt. Sullivan testified that he pulled over in order to perform a *Terry* stop of three individuals, but neither he nor Moriarty checked IDs for names or addresses (Pl. Ex. 3 at 32/16-22); he did not ask whether anyone had been involved in a fight (33/3-5); he did not investigate to see whether any of them had just been running, *e.g.*, by checking their heart rate (32/23-33/2); and he did not try to identify the property owner or investigate what kind of a party was going on there (33/24-34/4). In his police report, Lt. Sullivan wrote that he was trying to explain "the serious nature of the fight call with weapons," but not how the fight call allegedly related to 115 Chelmsford Street or anyone there. Pl. Ex. 8. Phaysanh and Somphet Khakeo stated that the officers said there was a fight up the street, but nothing more. Pl. Ex. 6 at 71/16-17; Pl. Ex. 16 at 40/24-41/16. Finally, to whom "the three individuals" is referring is undefined and unclear in this paragraph.

16. Disputed. Several witnesses testified that Moriarty and Lt. Sullivan did not make verbal attempts at explanation, but instead shouted for every male to put their hands up and/or to

       get against the wall. Pl. Ex. 10 at 8/9-10; Pl. Ex. 13 at 11/15-16; Pl. Ex. 16 at 40/21-22. According to Lt. Sullivan's police report, he was not explaining the purpose of the police presence at 115 Chelmsford Street, but "the serious nature of the fight call with weapons" which involved another area. Pl. Ex. 8. Admitted insofar as individuals who were present said something about going up the street to investigate the fight there. Pl. Ex. 6 at 71/13-21.

17.    Disputed. The contention that Lt. Sullivan explained that he was conducting a "necessary investigation" related to a fight around the corner, and that he said the officers would leave when the alleged investigation was concluded, are not supported by Def. Ex. A and are contradicted by evidence. No one demanded that the officers "get the fuck" off the property, or told the officers that they did not "belong here." Affidavit of Phaysanh Khakeo (hereinafter "Pl. Ex. 7"), ¶ 5. In Lt. Sullivan's police report, he states that he explained "the serious nature of the fight call" in another area but not that he was conducting any kind of investigation at 115 Chelmsford Street related to the call; and in fact, he did not conduct any such investigation. Pl. Ex. 8. Further, no investigation was "necessary" because no one present was involved in any fight; they were innocently attending a family barbeque, and they happened to be "Asian". Pl. Ex. 6 at 34/17-23; Pl. Phaysanh Khakeo's Ans. to Def. Sullivan's First Set of Interrogs., (hereinafter "Pl. Ex. 12") No. 7. The response from the individuals at the party to the presence of the police was at first at a normal tone, and eventually got louder, but was "polite." Pl. Ex. 6 at 72/1 - 73/5. Somphet Khakeo asked, perhaps loudly, what the police were doing there, but never swore or was profane with the officers. Pl. Ex. 16 at 42/3-11. Moriarty told

      Somphet Khakeo to "shut up," and he did. Pl. Ex. 16 at 100/1-23. Phaysanh Khakeo and Inthala Vannaraj were both found not guilty of disorderly conduct, assault and battery of a police officer, and resisting arrest at their criminal trials. *Com. v. Khakeo and Vannaraj*, Case Nos. 0111CR006131-32 (Mass. Dist. Ct. (Lowell) 2002), Tr. Transcr. vol. III-1 (hereinafter "Pl. Ex. 17"); The criminal charge of disorderly conduct against Somphet Khakeo was dismissed. Pl. Ex. 16 at 70/17. No one else was arrested. Phaysanh Khakeo and Vyrasack Khakeo testified that everyone at the party complied with the orders of the police officers. Pl. Ex. 10 at 10/18-21; *Com. v. Khakeo and Vannaraj*, Case Nos. 0111CR006131-32 (Mass. Dist. Ct. (Lowell) 2002), vol. II-7 (Vyrasack Khakeo)(hereinafter "Pl. Ex. 11") at 8/5-14. Moriarty swore at Plaintiff and his family, telling people to "Shut the fuck up" and asking Plaintiff "What is your fucking name?" Pl. Ex. 6 at 74/7-78/8.

18.   Disputed. Lt. Sullivan fails to state anything of the sort in his police report. The only people out of control at 115 Chelmsford Street were police officers Lt. Sullivan and Moriarty. Everyone present complied with their orders to get against the wall. Pl. Ex. 10 at 10/18-21; Pl. Ex. 11 at 8/5-14. Plaintiff gave Moriarty his name when asked (Pl. Ex. 6 at 76/10), and those present at the barbeque, understandably, questioned why on earth they were being harassed and assaulted for no apparent reason (72/1-73/5; Pl. Ex. 16 at 42/3-11). When Plaintiff asked Moriarty for his name, it angered him and he struck Plaintiff. Pl. Ex. 6 at 76/4-11. Neither Plaintiff nor anyone else at the party, other than Defendant Moriarty, used profanity. Pl. Ex. 7, ¶ 7.

19.   Disputed. No one at 115 Chelmsford Street represented any danger to Moriarty or Lt.

Sullivan at any time, and such a statement is not supported by Def. Ex. A, ¶ 20. Though Defendant Sullivan claims in his deposition that their purpose in stopping at Plaintiff's home was to conduct a *Terry* stop, they did not get any names or addresses (Pl. Ex. 3 at 32/16-19); he did not ask whether anyone had been involved in a fight (33/3-5); he did not investigate to see whether any of them had just been running, *e.g.*, by checking their heart rate (32/23-33/2); and he did not try to identify the property owner or investigate what kind of a party was going on there (33/24-34/4). Moriarty, Phaysanh Khakeo, Somphet Khakeo, and Xaykham Kosaketh all stated that Officers Moriarty and Lt. Sullivan entered the area by telling every male there to get up against the wall and/or to put their hands up. Pl. Ex. 4; Pl. Ex. 10 at 8/9-10; Pl. Ex. 13 at 11/15-16; Pl. Ex. 16 at 40/21-22. Moriarty testified at trial that Lt. Sullivan ordered people against the wall. Pl. Ex. 9 at 11/8-9. Lt. Sullivan makes no mention in his police report of Moriarty detaining any individuals, stating only that Moriarty told one individual to take his hands out of his pockets. Pl. Ex. 8. Moriarty only pat frisked Mounie Nokham, not three individuals, and only after seeing a black object in his hand, which turned out to be a cell phone. Pl. Ex. 4; Pl. Ex. 13 at 10/2-11/7. Moriarty could not have "concluded" his alleged investigatory detention, because, according to his and Lt. Sullivan's testimony, before Moriarty turned his attention to Phaysanh, neither officer had asked any questions to determine anyone's identity. Pl. Ex. 2 at 33/16-21; Pl. Ex. 3 at 32/21-33/10. The verbal response from the individuals at the party to the presence of the police was at a normal tone and was "polite." Pl. Ex. 6 at 72/1 - 73/5. Somphet Khakeo asked, perhaps loudly, what the police were doing there, but never swore or was profane with the officers. Pl. Ex. 16 at

        42/3-11. Moriarty told Somphet Khakeo to "shut up," and he did. Pl. Ex. 16 at 100/1-23. Inthala Vannaraj was found not guilty of disorderly conduct, assault and battery of a police officer, and resisting arrest at his criminal trial. Pl. Ex. 17. The criminal charge of disorderly conduct against Somphet Khakeo was dismissed. Pl. Ex. 16 at 70/17. No one else was arrested. Phaysanh Khakeo and Vyrasack Khakeo testified that everyone at the party complied with the orders of the police officers. Pl. Ex. 10 at 10/18-21; Pl. Ex. 11 at 8/5-14. Moriarty testified that while he was engaged with Phaysanh Khakeo, he could not recall Lt. Sullivan saying anything. Pl. Ex. 2 at 87/16-20. Lt. Sullivan had no reason to turn his attention away from Moriarty and Phaysanh Khakeo. Lt. Sullivan tackled Inthala Vannaraj from behind as he stood up, preserving a perimeter around Moriarty as he attacked Phaysanh. Pl. Ex. 6 at 167/16-168/6; Pl. Ex. 13 at 18/15; *Com. v. Khakeo and Vannaraj*, Case Nos. 0111CR006131-32 (Mass. Dist. Ct. (Lowell) 2002), Tr. Transcr. vol. II-12 (Inthala Vannaraj)(hereinafter "Pl. Ex. 14") at 13/10-18. Xaykham Kosaketh saw, when Moriarty first struck Phaysanh Khakeo, that Lt. Sullivan was standing behind Vannaraj, and upon standing up, Vannaraj was pushed down by Lt. Sullivan, and witnessed Lt. Sullivan strike Vannaraj with his flashlight. Pl. Ex. 13 at 15/13, 16/12-14, 18/15-16. Admitted that Lt. Sullivan "observed the Plaintiff and Moriarty... verbally engaged with one another."

20.   Disputed. Plaintiff Khakeo never physically engaged, grappled, wrestled with Moriarty, engaged in mutual combat, or gripped Moriarty. Pl. Ex. 7, ¶ 10. Khakeo was concerned that Moriarty was swearing at Khakeo's family, so he asked Moriarty for his name. Pl. Ex. 6 at 74/7-74/13. Moriarty gave his name, and swore, "What's your fucking name?"

Pl. Ex. 6 at 74/7-78/8; Pl. Ex. 10 at 11/9-11; Pl. Ex. 11 at 10/2-3; *Com. v. Khakeo and Vannaraj*, Case Nos. 0111CR006131-32 (Mass. Dist. Ct. (Lowell) 2002), Tr. Transcr. vol. II-6 (Phila Khakeo) (hereinafter "Pl. Ex. 15") at 6/16-20. Plaintiff responded loudly, "Phaysanh Khakeo, sir." Pl. Ex. 6 at 76/10. Plaintiff yelled it because Moriarty was yelling and swearing at him. Pl. Ex. 6 at 76/14-17. Moriarty then proceeded to strike Plaintiff on the bottom of his right ribs with a flashlight that had been in his hand the whole time, without any provocation. Pl. Ex. 6 at 76/23-77/5 & 78/4-9. Moriarty then struck Plaintiff on his left shoulder causing a bruise, after which the impact of the two blows caused Plaintiff to lean over towards Moriarty. Pl. Ex. 6 at 79/1-19. Moriarty then pushed Plaintiff onto the car, face down, and hit him over the head with the flashlight. Pl. Ex. 6 at 81/24-82/20. Plaintiff never struggled with Moriarty; the attack was completely unprovoked. Pl. Ex. 6 at 82/21-24. Phaysanh Khakeo, Phila Khakeo, and Vyrasack Khakeo testified that Phaysanh Khakeo asked Moriarty his name, to which Moriarty responded with his name and the subsequent demand, "what's your fucking name?" Pl. Ex. 10 at 11/9-11; Pl. Ex. 11 at 10/2-3; Pl. Ex. 15 at 6/16-20. They said, at that point, Phaysanh Khakeo yelled his name, and Moriarty struck him in his stomach with his flashlight. Pl. Ex. 6 at 76/10-11 & 78/5-9; Pl. Ex. 10 at 11/17-22; Pl. Ex. 13 at 15/20-23; Pl. Ex. 14 at 12/15-17; Pl. Ex. 15 at 6/24-7/1; Pl. Ex. 16 at 49/14-22. Moriarty struck Plaintiff in the head, and at some point, he lost consciousness. Pl. Ex. 6 at 85/21-23; Pl. Ex. 10 at 11/22-23 & 13/11-16; Pl. Ex. 11 at 10/14; Pl. Ex. 12, No. 7; Pl. Ex. 15 at 7/1-2. Somphet Khakeo also saw Moriarty strike Phaysanh Khakeo in the stomach, and saw that Phaysanh was unconscious. Pl. Ex. 16 at 49/14-22 & 58/8-24.

22. Disputed. Lt. Sullivan did nothing to intervene. Pl. Ex. 7, ¶ 9. After Moriarty began to strike Phaysanh Khakeo, Lt. Sullivan threw Vannaraj to the ground and started hitting him with a flashlight. Pl. Ex. 13 at 17/2-5; Pl. Ex. 14 at 13/10-18 & 14/9-10. Xaykham Kosaketh saw Moriarty begin to strike Phaysanh Khakeo, after which Vannaraj stood up, and Lt. Sullivan threw him to the ground and started hitting him with a flashlight. Pl. Ex. 13 at 16/15-17 & 17/2-5; Pl. Ex. 14 at 13/10-18 & 14/9-10. Xaykham Kosaketh saw, when Moriarty first struck Phaysanh Khakeo, that Lt. Sullivan was standing behind Vannaraj, and upon standing up, Vannaraj was pushed down by Lt. Sullivan, and witnessed Lt. Sullivan strike Vannaraj with his flashlight. Pl. Ex. 13 at 15/13, 16/12-14 & 18/15-16.

23. Disputed. Inthala Vannaraj did not strike Lt. Sullivan. Lt. Sullivan testified that he did not "sustain any injuries that night." Pl. Ex. 3 at 48/11-12. Vannaraj was charged and tried for the battery of Lt. Sullivan and found not guilty. Pl. Ex. 17. Kosaketh testified that Vannaraj never threw a punch or tried to strike Lt. Sullivan. Pl. Ex. 13 at 17/1, 18/19 & 19/20. Vyrasack testified that Lt. Sullivan knocked chairs over in his effort to restrain the Plaintiff's guests, even as Moriarty viciously attacked Plaintiff nearby. Pl. Ex. 11 at 17/12.

24. Disputed. Lt. Sullivan was not the victim of a battery. Lt. Sullivan did not "sustain any injuries that night." Pl. Ex. 3 at 48/11-12. Vannaraj was charged and tried for the battering of Lt. Sullivan and found not guilty. Pl. Ex. 17. After Moriarty began to strike Phaysanh Khakeo, Lt. Sullivan threw Vannaraj to the ground and started hitting him with a flashlight. Pl. Ex. 13 at 17/2-5; Pl. Ex. 14 at 13/10-18 & 14/9-10. Xaykham Kosaketh

        witnessed Moriarty first strike Phaysanh Khakeo, after which Vannaraj stood up, and she witnessed Lt. Sullivan throw him to the ground and hit him with a flashlight. Pl. Ex. 13 at 16/15-17 & 17/2-5; Pl. Ex. 14 at 13/10-18 & 14/9-10. Xaykham Kosaketh testified at trial that when Moriarty struck Phaysanh Khakeo, Lt. Sullivan was standing behind Vannaraj, and upon standing up, Vannaraj was pushed down by Lt. Sullivan, and that she witnessed Lt. Sullivan strike Vannaraj with his flashlight. Pl. Ex. 13 at 15/13, 16/12-14 & 18/15-16. Kosaketh testified that Vannaraj never threw a punch or tried to strike Lt. Sullivan. Pl. Ex. 13 at 17/1, 18/19 & 19/20. Vyrasack testified that Lt. Sullivan knocked chairs over in his effort to restrain the Plaintiff's guests, even as Moriarty viciously attacked the plaintiff nearby. Pl. Ex. 11 at 17/12. Xaykham Kosaketh also testified that Lt. Sullivan alone handcuffed Vannaraj, after picking Vannaraj up from the ground and putting him against a car. Pl. Ex. 13 at 19/8-10.

25. Disputed. Plaintiff admits that he was bleeding from a cut on his forehead. Plaintiff denies the timing of when Lt. Sullivan observed he was bleeding, since, after Plaintiff was beaten, he was covered in blood so that it would have been difficult not to see. *See* Photograph of Phaysanh Khakeo (hereinafter, "Pl. Ex. 18"). The contention that Somphet Khakeo or anyone else engaged or continued to engage in "riotous behavior" is not supported by Def. Ex. A, and is disputed. Pl. Ex. 7, ¶¶ 6 & 7. The charge against Somphet Khakeo for disorderly conduct was dismissed. Pl. Ex. 16 at 70/17. Phaysanh Khakeo and Inthala Vannaraj were both found not guilty of disorderly conduct, assault and battery of a police officer, and resisting arrest at their criminal trials. Pl. Ex. 17. The response from the individuals at the party to the presence of the police was in a normal

tone and "polite." Pl. Ex. 6 at 72/1 - 73/5.  Somphet Khakeo asked, perhaps loudly, what the police were doing there, but never swore or was profane with the officers.  Pl. Ex. 16 at 42/3-11.  Moriarty told Somphet Khakeo to "shut up," and he did.  Pl. Ex. 16 at 100/1-23.  Phaysanh Khakeo and Vyrasack Khakeo testified that everyone at the party complied with the orders of the police officers.  Pl. Ex. 10 at 10/18-21; Pl. Ex. 11 at 8/5-14.  Denied that Lt. Sullivan requested an ambulance.  The call log for the night of the incident does not show that Lt. Sullivan contacted the dispatcher.  It shows that Lt. Sullivan communicated with Officer Quirbach, but Lt. Sullivan testified that Quirbach was an officer that responded by coming to the scene.  Lowell Public Safety Communications, Call Number 01-060375(Pl. Ex. 19); Pl. Ex. 3 at 77/4-8.

RESPECTFULLY SUBMITTED,
For the plaintiff:

/s/ Howard Friedman
_____
Howard Friedman, BBO# 180080
Jennifer L. Bills, BBO# 652223
Law Offices of Howard Friedman, P.C.
90 Canal Street, 5th Floor
Boston, MA 02114-2022
(617) 742-4100

Dated:   January 20, 2006

**CERTIFICATE OF SERVICE**

I certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail / by hand.

Date:  January 20, 2006  Howard Friedman